# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHAWN BRIDGES,

        Petitioner,

v.                                  Case No. 18-CV-1247

QUALA CHAMPAGNE,

        Respondent.

## DECISION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

**1. Facts and Procedural History**

On February 28, 2013, Shawn Bridges fired as many as 15 rounds from an assault rifle toward a crowd of roughly ten people. (ECF No. 5-1 at 78, 1.) Two undercover officers investigating a prior homicide witnessed the incident and, after a foot pursuit and with the assistance of a police dog, Bridges was arrested. (ECF No. 5-1 at 120-24.) He was charged with first-degree recklessly endangering safety and possession of a firearm by a felon and pled guilty. The court sentenced him on April 10, 2014, to a total term of imprisonment of 11 years (four years of initial confinement on count one, three years of

initial confinement on count two, and two years of extended supervision on each count, all to be served consecutively). (ECF No. 17-1.)

Bridges appealed and his appointed attorney filed a no-merit report. (ECF No. 5-1 at 17, 39-54.) Bridges responded to the no merit report. (ECF No. 17-2.) The Wisconsin Court of Appeals agreed that an appeal lacked any merit, allowed counsel to withdraw, and affirmed Bridges's conviction on October 18, 2017. (ECF No. 5-1 at 16-28.)

The Wisconsin Supreme Court denied Bridges's petition for review (ECF No. 17-3 at 7-39) on February 13, 2018 (ECF No. 5-1 at 199). Bridges filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 on August 13, 2018. (ECF No. 1.) All parties consented to have this court decide the matter. (ECF Nos. 27, 28.)

## 2. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petition under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff

2

burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). Thus, a federal court could have the "firm conviction" that a state

court's decision was incorrect but, provided that error is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer*, 538 U.S. at 75-76.

3. Analysis

   3.1. Plea and Sentencing

Bridges offers a variety of overlapping arguments regarding his plea and sentencing whereby he argues that his plea was involuntary and his attorney ineffective. (ECF No. 1 at 6-7, Claims 1 – 3, 7.) He argues that his trial counsel promised him that he would receive a sentence in the range of three to five years and that the prosecutor would remain silent at the sentencing hearing. (ECF No. 5 at 9, 15-16, 18.) He also argues that his attorney never told him that he would lose the ability to raise certain claims on appeal (ECF No. 5 at 10, 17) or that he could be ordered to serve the sentences consecutively (ECF No. 5 at 22; *see also* ECF No. 1 at 3).

"It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28 (1992). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). This requires the defendant to have "(1) full awareness of the plea's direct consequences; (2) real notice of the true nature of the charge against him; and (3) an understanding of the law in relation to the facts." *Jurjens v. Dittman*, No. 14-cv-462-jdp, 2018 U.S. Dist. LEXIS 125841, at *8 (W.D. Wis. July 27, 2018) (internal quotation marks and citations omitted)

(quoting *Brady v. United States*, 397 U.S. 742, 747-48 (1970); *Henderson v. Morgan*, 426 U.S. 637, 645 (1976); *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). "If the plea is not voluntary and knowing, then it violates due process, and is thus void." *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir. 2001).

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971). If a defendant was induced to enter a plea by a promise of the prosecutor, the prosecutor must honor that promise. *Id.* at 262. Thus, "the State 'is not permitted to pull the rug out from under a defendant who has negotiated a plea agreement by taking steps to induce the judge to give a higher sentence.'" *Campbell v. Smith*, 770 F.3d 540, 548 (7th Cir. 2014) (quoting *United States v. Hauptman*, 111 F.3d 48, 51 (7th Cir. 1997)). "The issue whether a prosecutor substantially and materially breached a plea agreement is a question of law." *Id.* at 547 (citing *United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003)).

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation

fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

"In the context of a guilty plea, a petitioner demonstrates prejudice by 'show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Prejudice does not depend upon the petitioner being able to prove that "had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (internal quotation marks omitted).

Bridges's arguments are contradicted by the transcript of his thorough plea hearing. The parties agreed that the state was free to argue as to the length of any sentence (ECF No. 5-1 at 60) and the court explicitly confirmed this understanding with Bridges (ECF No. 5-1 at 63). In fact, when Bridges's attorney mistakenly objected at the sentencing hearing to the prosecutor recommending the maximum sentence, the court reviewed the transcript of the plea hearing and confirmed that the recommendation was consistent with the plea agreement, at which point Bridges's attorney withdrew his objection and Bridges confirmed his agreement. (ECF No. 15-1 at 141-43.)

At the plea hearing the court explained to Bridges that he could be ordered to serve the sentences concurrently and, thus, faced a cumulative maximum term of twelve-and-a-half years of initial confinement and ten years of extended supervision. (ECF No. 5-1 at 67.) Bridges said he understood. (ECF No. 5-1 at 67.) The court further explained that it is not a party to any plea negotiations and does not have to follow anyone's recommendation. (ECF No. 5-1 at 68.) Again, Bridges said he understood this. (ECF No. 5-1 at 69.) The court explained that Bridges was giving up his right to bring any motion challenging the constitutionality of any police action, and Bridges again said he understood. (ECF No. 5-1 at 73-74.) The court also confirmed with Bridges that no one made any threats or promises to induce him to plead guilty. (ECF No. 5-1 at 75.) The court went through the elements of the crimes by using the jury instructions and confirmed that Bridges had discussed the elements with his attorney. (ECF No. 5-1 at 75-83.) The

court also confirmed with Bridges and his attorney that they had discussed the possibility of using self-defense and necessity as defenses. (ECF No. 5-1 at 87-88.) Because Bridges's claims for relief are plainly contradicted by the record, he is not entitled to a writ of habeas corpus on these claims.

At various other points in his petition Bridges offers other complaints. He argues that his trial attorney "failed to call" an investigator as a witness, which denied him due process. (ECF No. 1 at 3.) But Bridges offers no indication as to what sort of proceeding the investigator would have testified at. Because Bridges pled guilty, there was no trial. Therefore, Bridges is not entitled to habeas relief on this basis.

Bridges also argues that he was "compelled to plead guilty due to the State wanted [sic] to amend the information and charge him with 3 more Reckless Endangering Lives." (ECF Nos. 1 at 3; 5 at 12.) Bridges does not offer any evidence to support this claim. But even if the claim were true, it would not render his plea constitutionally involuntary. Provided the charges were supported—and by all indications they were—the state is entitled to pursue additional charges or forego those charges in consideration for the defendant's agreement to plead guilty.

In sum, the court of appeals' conclusions that Bridges's plea was knowing and voluntary and that he received effective representation of counsel were not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). Nor did

8
Case 2:18-cv-01247-WED   Filed 04/20/20   Page 8 of 19   Document 29

it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Therefore, Bridges is not entitled to habeas relief on these bases.

### 3.2. Challenge Incarceration Program

Bridges also argues, "The evidence is clear and convincing that Petitioner herein was intoxicated, smoking weefer [sic] and drinking at the time of the crime and met the criteria for the Challenge Incarcerated Program …." (ECF No. 5 at 22; *see also* ECF No. 1 at 7, Claim 4.)

Setting aside the court's doubts as to whether this presents a claim cognizable in habeas, Bridges was statutorily ineligible for the program. Participants must be less than 40 years old. Wis. Stat. § 302.045(2)(b) (2011-2012). Bridges was 42 when he was convicted. (ECF Nos. 5-1 at 155; 17-1.) Therefore, the court of appeals' rejection of this argument (ECF No. 5-1 at 22) was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor was it "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Consequently, Bridges is not entitled to habeas relief on this claim.

9
Case 2:18-cv-01247-WED   Filed 04/20/20   Page 9 of 19   Document 29

### 3.3. Juvenile Record

Bridges also argues that his juvenile record was unlawfully used against him at sentencing. (ECF No. 5 at 23-24; *see also* ECF No. 1 at 3, 7, Claim 6.) However, there is no indication that any juvenile adjudication was referenced at his sentencing. The citations to the transcript that he offers do not support his claim. The earliest charge referenced at his sentencing was a 1990 conviction for operating a motor vehicle without the owner's consent. (ECF No. 5-1 at 118, 146, 151.) Bridges was 19 years old at that time and thus not a juvenile. (ECF No. 5-1 at 151.)

But even if the court had relied on a juvenile adjudication it would not be error.

> Juvenile offenses are routinely and appropriately considered for sentencing purposes. *See, e.g.*, United States Sentencing Commission, Guidelines Manual, § 4A1.2(d). However, relying on cases in which the Supreme Court held that adult convictions obtained in violation of the right to counsel recognized in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) cannot be used to enhance a subsequent sentence, the Wisconsin Supreme Court has held that juvenile adjudications occurring before juveniles had a right to counsel in juvenile proceedings may not be considered for sentencing purposes. *Stockwell v. State*, 59 Wis. 2d 21, 29-33, 207 N.W.2d 883, 887-89 (1973) (discussing *Loper v. Beto*, 405 U.S. 473 (1972); *United States v. Tucker*, 404 U.S. 443 (1972)); *Moore v. State*, 83 Wis. 2d 285, 308-09, 265 N.W.2d 540, 550 (1978); *see also Majchszak v. Ralston*, 454 F. Supp. 1137, 1141 n.1 (W.D. Wis. 1978).

*Holifield v. Mitchell*, No. 14-CV-1486, 2018 U.S. Dist. LEXIS 90441, at *24-25 (E.D. Wis. May 31, 2018). Juveniles obtained the right to counsel in 1967, *In re Gault*, 387 U.S. 1 (1967), and Bridges was born in 1971 (ECF No. 17-1 at 1). As a result, he would have had a right to counsel in any juvenile proceeding in which he was involved.

Therefore, the court of appeals' rejection of this claim (ECF No. 5-1 at 27) was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor was it "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Consequently, Bridges is not entitled to habeas relief on this claim.

### 3.4. Self-Defense

Bridges argues that his attorney was ineffective for not raising self-defense as a defense. (ECF No. 5 at 25-27; *see also* ECF No. 1 at 7.) But Bridges pled guilty. There was no trial at which to present a claim of self-defense. To the extent that Bridges's argument is that his attorney was ineffective for not discussing with him the possibility of going to trial and claiming self-defense, this is contradicted by the transcript of the sentencing hearing. (ECF No. 5-1 at 87-88.) Bridges confirmed that his attorney had discussed with him the potential to assert a claim of self-defense. (ECF No. 5-1 at 87-88; *see also* ECF No. 5-1 at 161 (defense counsel's discussion of self-defense at sentencing hearing).) Therefore, the court of appeals' rejection of this claim (ECF No. 5-1 at 20-21) was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor was it "a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Consequently, Bridges is not entitled to habeas relief on this claim.

### 3.5. Character Witnesses

Bridges also argues that he was denied a constitutional right to present all 30 to 35 of his "character witnesses" at his sentencing hearing. (ECF No. 5 at 10, 27-28; *see also* ECF No. 1 at 7, Claim 8.) The court of appeals rejected this claim by noting that the circuit court has wide discretion in managing proceedings. (ECF No. 5-1 at 23.) It said that, given the circumstances of the sentencing hearing, precluding such a presentation was reasonable. (ECF No. 5-1 at 23.)

However, Bridges does not point to, and the court has not identified, anything in the record demonstrating that Bridges ever requested that he be allowed to have 30 to 35 character witnesses speak on his behalf at his sentencing. Consequently, there is no indication that the circuit court ever denied such a request. Rather, defense counsel stated, "I believe there's just a couple of people that would like to address the Court, Judge." (ECF No. 5-1 at 167.) The court responded, "If we can do it briefly," and then moved on to discuss a fact question. (ECF No. 5-1 at 167.) After resolving that issue, the court said, "All right. Defense, who would you like to speak on behalf of the defendant?" (ECF No. 5-1 at 168.) Bridges had three people speak on his behalf. The first was a woman identified as a victim of the offense because she was shot during the incident, but who said she did not believe it was Bridges who shot her. (ECF No. 5-1 at 130.) The second

12
Case 2:18-cv-01247-WED   Filed 04/20/20   Page 12 of 19   Document 29

was a leader of a community organization where Bridges volunteered. (ECF No. 5-1 at 131.) Both of these women testified at the initial sentencing hearing that was adjourned before completion. Finally, at the second sentencing hearing there was a third woman who indicated she was speaking on behalf of Bridges's family. (ECF No. 5-1 at 169.)

Bridges's attorney stated that the defendant's supporters "could go on forever." (ECF No. 5-1 at 173.) Although it seems that he might have planned to have up to five more people speak on Bridges's behalf, he instead said that he thought that doing so would be repetitious. (ECF No. 5-1 at 173.) He asked the court to note that "these people are here to support him saying the exact same thing" as was said by the woman who spoke on behalf of Bridges's family. (ECF No. 5-1 at 173.) In response, the judge acknowledged the presence of 30 to 35 people in the audience. (ECF No. 5-1 at 173.) Many people submitted letters to the court in support of Bridges, which the judge acknowledged he had received and reviewed. (ECF No. 5-1 at 159.)

Setting aside the fact that the court has not identified anything in the record indicating that Bridges ever requested that 30 to 35 people speak on his behalf at sentencing, even if he had and the court had denied the request, Bridges would not be entitled to habeas relief. The United States Supreme Court has never said that a defendant has the right to have an unlimited number of persons speak on his behalf at sentencing. The only Supreme Court case that Bridges cites is *Chambers v. Mississippi*, 410 U.S. 284 (1973), which lacks any apparent relevance to his claim. *Chambers* involved a defendant's

13

effort to introduce evidence that another person had admitted to the murder. Relying on a state evidentiary rule, the trial court blocked the defendant's efforts to impeach the witness with his prior admissions. *Id.* at 295. The court further refused on hearsay grounds to allow the defendant to call other witnesses who would testify to those admissions. *Id.* at 295. The Supreme Court concluded that these decisions denied the defendant his due process right to present a defense. *Id.* at 302.

*Chambers* had nothing to do with the right of a defendant to have people speak on his behalf at sentencing. Bridges's right to present a defense was not implicated because he pled guilty. As for Bridges's argument that "[t]his court can set a new precedent or harmonize the law for others to follow," (ECF No. 25 at 14), that is not true. A federal court cannot establish new constitutional law in a habeas case. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

To the extent that Bridges may be arguing that his attorney was ineffective for not asking to have 30 to 35 people speak on his behalf (*see* ECF No. 5 at 31), the respondent notes that Bridges procedurally defaulted such an argument by not presenting it to the Wisconsin courts (ECF No. 23 at 36). Beyond that, even if the court were to consider the claim, the court would deny it. *See* 28 U.S.C. § 2254(b)(2). Bridges has not proffered what any person would have said on his behalf. Thus, the court must accept his attorney's representation that what every additional person would have said would have been

cumulative to both the statements of those who did speak and the letters submitted to the court. It is reasonable for an attorney to forego presenting cumulative facts to the court.

Therefore, the court of appeals' rejection of this argument (ECF No. 5-1 at 23) was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor was it "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Consequently, Bridges is not entitled to habeas relief on this claim.

### 3.6. Sentence

Bridges argues that he received a harsh and excessive sentence in violation of equal protection because there were other shooters involved in the incident who were not charged. (ECF No. 5 at 28-29; *see also* ECF No. 1 at 7, Claim 9.)

Setting aside questions of whether Bridges presented this as a constitutional claim in state court (*see* ECF No. 23 at 36), the court denies the claim on its merits. *See* 28 U.S.C. § 2254(b)(2). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (affirming sentence of 25 years to life for defendant convicted of a $1200 theft) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (Kennedy, J., concurring)). Given the facts of the case, even

with the gloss that Bridges tries to put on those facts, his sentence was reasonable and proportionate when considered alongside relevant aggravating and mitigating factors.

Bridges also argues that he "has shown a prima facie case that his sentence is harsh and excessive in nature due to the breach plea agreement." (ECF No. 5 at 29.) As explained above, the plea agreement was not breached. Therefore, there is no basis for concluding that Bridges's sentence was excessive on that ground.

Finally, the fact that others were not charged does not present a constitutional claim unless Bridges can show that the reason he was singled out for prosecution was because of some protected status, such as race. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 465 (1996). From the court's review of the record it appears that the state faced various challenges in identifying, much less prosecuting, other shooters. Bridges was identified because two police officers witnessed him shooting and chased him until he was arrested. There is no indication that police officers were able to similarly identify any other shooter. Simply because the state was unable to prosecute others does not mean that it was somehow constitutionally precluded from prosecuting Bridges or that this merited a lesser sentence for Bridges. The government is not required to prosecute everyone who might have violated the law as part of an incident or no one at all. Therefore, Bridges is not entitled to habeas relief on this basis.

### 3.7. Ineffective Assistance of Appellate Counsel

Bridges argues that his appellate counsel was ineffective because he did not present stronger arguments. (ECF No. 5 at 10-11 23; *see also* ECF No. 1 at 7, Claim 5.) He points to a letter that he sent to his appellate counsel and a motion for sentence modification where he says he identified the issues he wanted his attorney to raise on appeal. (ECF No. 5-1 at 35.)

Wisconsin law requires that claims of ineffective assistance of appellate counsel be presented by way of a petition for a writ of habeas corpus filed in the court of appeals. State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992). Bridges never pursed such a petition but instead attempted to present his claim of ineffective assistance of appellate counsel in his response to the no-merit report. The court of appeals rejected this attempt. It noted that claims of ineffective assistance of appellate counsel were "outside the scope of this appeal," citing *Knight*. (ECF No. 5-1 at 26.)

Because the court of appeals rejected his claim on state law grounds rather than on its merits, the claim is beyond this court's review. *See* Miranda v. Leibach, 394 F.3d 984, 992 (7th Cir. 2005); *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003) (citing *Harris v. Reed*, 489 U.S. 255, 263, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989)). But even if the court were to look beyond Bridges's procedural default, the claim would fail on its merits.

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel but with a special gloss when the challenge is

17

Case 2:18-cv-01247-WED    Filed 04/20/20    Page 17 of 19    Document 29

aimed at the selection of issues to present on appeal." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)) (internal citation omitted). "Appellate counsel is not required to raise every non-frivolous issue and her performance 'is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised.'" *Long v. Butler*, 809 F.3d 299, 312 (7th Cir. 2015) (quoting *Makiel*, 782 F.3d at 898). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898 (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)). And a defendant alleging ineffective assistance of appellate counsel cannot satisfy the prejudice requirement of *Strickland* unless he can show that the neglected claim was meritorious. *Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014).

If Bridges regarded any of his identified claims as more meritorious than those presented by his appellate counsel, he was free to point those out in his response to the no-merit report. In fact, he did raise many of those issues (*compare* ECF No. 5-1 at 36-38 *with* ECF No. 17-2 at 5-6) and the court of appeals addressed them. To the extent that Bridges is arguing that his appellate counsel was ineffective for not presenting the claims that Bridges, too, failed to present, the claim fails for want of proof of prejudice. Moreover, the court has reviewed the claims and finds them to be without merit and

generally foreclosed by his guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, Bridges is not entitled to habeas relief on this claim.

### 3.8. Certificate of Appealability

Finally, the court concludes that Bridges has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Bridges's petition for a writ of habeas corpus is denied and this action is dismissed. The court denies Bridges a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of April, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge